SOLOMON BURT & another *vs.* OWEN GEARY & another.

Norfolk.   Jan. 30. — Feb. 26, 1880.   MORTON & SOULE, JJ., absent.

If a poor debtor directs an officer to obtain from a magistrate a notice to the
creditor of the desire of the debtor to take the oath for the relief of poor
debtors, and to have a time appointed for the hearing not later than a certain
day, and the magistrate issues a notice in due form, appointing a later day,
which notice is duly served upon the creditor, the debtor may repudiate the
notice, and give a new notice immediately, notwithstanding the Gen. Sts.
c. 124, § 14.

CONTRACT on a recognizance entered into, under the Gen.
Sts. *c.* 124, § 10, by the defendant Geary as principal, and the
other as surety, and conditioned that Geary, who had been ar-
rested on July 19, 1878, on an execution in favor of the plain-
tiffs, should within thirty days from the time of his arrest deliver
himself up for examination, before some magistrate authorized to
act, giving notice of the time and place thereof in the manner
provided by law, and appear at the time fixed for his examina-
tion, and from time to time until the same was concluded, and
not depart without leave of the magistrate, making no default
at any time fixed for his examination, and abide the final order
of the magistrate thereon.

The case was submitted to the Superior Court, and, after
judgment for the plaintiffs, to this court on appeal, on an agreed
statement of facts in substance as follows:

In the evening of August 15, 1878, Geary's attorney at law
gave to an officer a notice to the plaintiffs, in the usual form, of
Geary's desire to take the oath for the relief of poor debtors,
with blank spaces left for the time and place of the examina-
tion, and directed him to take it to a master in chancery in
Hyde Park, and have him fill in the blanks, and appoint the
time for the hearing as early as possible, and not later than
August 17, 1878, and then serve it upon the plaintiffs.   The
master in chancery thereupon issued the notice, appointing Au-
gust 19, 1878, at three o'clock in the afternoon, as the time
for the examination, and the notice was duly served upon the
plaintiffs.   On August 17, Geary's attorney was informed of the
time appointed, and he immediately went before a trial justice

in Brookline, and had a new notice issued, appointing that day at six o'clock in the afternoon, and the court-room of the police station in Brookline, as the time and place of the examination. This notice was served by an officer upon the plaintiffs, who lived in Brookline, at half-past three o'clock on that day, and the officer a few minutes afterwards read to the plaintiffs the following notice, dated August 17, 1878: "You are hereby notified that the notice of Owen Geary, arrested on execution in your favor, of his desire to take the poor debtor's oath, in which notice the office of H. B. Terry, Esq., at Hyde Park, in said county, is named as the place, and 3 o'clock P. M., on August 19th, 1878, is named as the time, was issued without my authority, and you are hereby requested to disregard the same. Owen Geary, by his attorney, James P. Farley."

At the time and place named in the notice issued by the trial justice, the plaintiffs did not appear; Geary appeared and was discharged. No appearance was made or further action taken on the notice issued by the master in chancery.

If upon these facts there was a breach of the recognizance, judgment was to be entered for the plaintiffs in the sum of $200; otherwise, for the defendants.

*J. B. Braman*, for the plaintiffs.

*J. P. Farley, Jr.*, for the defendants.

LORD, J. The only question argued or raised is whether the discharge of the poor debtor by the trial justice was authorized by law, or whether the proceedings before him were *coram non judice*, and therefore void.

The policy of the legislation of this Commonwealth has been to relieve a poor debtor from arrest and imprisonment for debt, upon its being made to appear, before a competent tribunal, that he has no property, and that he has committed no fraudulent act which should prevent his discharge. The tendency of the legislation has been to simplify proceedings, so that they shall be as little onerous to the debtor as possible, consistently with the rights of the creditor; and, while the debtor is to be allowed every reasonable facility for procuring his discharge, he is not to be permitted to make use of those facilities to the annoyance of the creditor. The debtor is permitted to give short notices, and to repeat them as often as is necessary to secure a speedy

discharge. He is not, however, allowed to do this wantonly, nor to the annoyance of his creditor, and therefore it is provided, as a general rule, that notices shall not be issued more frequently than once in seven days. Gen. Sts. c. 124, § 14. If this rule were absolute and inexorable, it might operate with great hardship to the debtor. The law has therefore provided that the rule shall have no application to a notice insufficient either in form or service. Such a notice imposes no obligation upon the creditor, and it is therefore no hardship to him that it may be treated as a nullity. Upon these general propositions there is no difference of opinion between the parties in this case.

The difference between them, and the question which we are to decide, underlies all these. It is this: Was a notice in behalf of the debtor issued by the master in chancery returnable on Monday, August 19, 1878, at three o'clock in the after-noon? If so, the trial justice who discharged the debtor had no jurisdiction of the case, and consequently had no authority to discharge him. No question is made of the sufficiency of the notice issued by the master in chancery, either in form or service. The only and exact question is, Was it a notice issued at the request or by the authority of the debtor, or under circumstances which bind him? We think it was not. If the master in chancery, of his own motion, without any communication with the debtor or his attorney, had issued this notice, whatever of irregularity, or even of misconduct, such act might imply on the part of the magistrate, it clearly could not affect the rights of this party. If, instead of acting upon his own motion, the magistrate had acted upon the request of a stranger, whose act was neither previously authorized nor subsequently ratified by the debtor, it is equally clear that the rights of the debtor could not be affected by it. If, in the latter case, the debtor should happen to become possessed of knowledge that such notice had been given in his behalf, and should immediately notify the parties that the proceeding was wholly unauthorized by him, the inequitableness of holding him responsible for the notice would only be more apparent, but not more real.

In this case, the debtor, by his attorney, authorized and requested a third party to do for him a particular act in a particular mode. He was not a general agent, and no discretion was

left to him to do any act except in the mode prescribed. It is true that the person sent was authorized to give the magistrate a certain discretion, but that discretion was to be exercised within certain prescribed limits, and not otherwise, and the messenger had no authority from the debtor to procure the notice which he did procure. If, after the notice had been issued, and the debtor had knowledge of it, he had simply repudiated it as an act not authorized by him, the question presented would be a different one. Instead of that, as the agreed facts find, he notified the creditor immediately upon the service that the notice which had been served was wholly unauthorized by him, and was to be so treated by the creditor. The fact that, by the terms of his recognizance, he must surrender himself to close confinement before the time when the notice was returnable, is not at all important in this case, because, by the agreed facts, it appears that the messenger appointed to procure the notice had special directions to procure it to be made on an earlier day. If it were a question of fact to be decided by a jury, the circumstance would be of some importance.

The policy of the law is to relieve a poor and honest debtor; the machinery by which this is accomplished is not intended as a snare to entrap one who in good faith, and with no want of proper diligence and care upon his part, is seeking to avail himself of its benefit. We think that this defendant did his whole duty in repudiating, as soon as he knew its existence, the notice by the master in chancery, and in notifying the creditor that the act was unauthorized.　　　　*Judgment for the defendants.*